307 Ga. 826
FINAL COPY

S18G1638. COEN v. APTEAN, INC. et al.

NAHMIAS, Presiding Justice.

The parties in this case have spent years engaged in a series of lawsuits. The case now before this Court concerns a claim of abusive litigation that Timothy Coen filed based on a previous contract lawsuit against his former employer that was resolved in his favor. In his abusive litigation case, Coen seeks punitive damages. In *Coen v. Aptean, Inc.*, 346 Ga. App. 815 (816 SE2d 64) (2018), the Court of Appeals upheld the trial court's ruling that punitive damages are not available for a statutory abusive litigation claim. See id. at 823-824. The Court of Appeals relied on its prior decisions that in turn rely on dicta in footnote 3 of this Court's opinion in *Yost v. Torok*, 256 Ga. 92, 95 n.3 (344 SE2d 414) (1986), which was decided three years before the current abusive litigation statutes, OCGA §§ 51-7-80 to 51-7-85, were enacted in 1989. See Ga. L. 1989, p. 408. OCGA § 51-7-83 (a) describes the damages that may be recovered in abusive

litigation actions this way: "A plaintiff who prevails in an action under this article shall be entitled to all damages allowed by law as proven by the evidence, including costs and expenses of litigation and reasonable attorney's fees."

We granted Coen's petition for certiorari to decide whether that statute authorizes the recovery of punitive damages. As explained below, we conclude that punitive damages generally may be recovered in an abusive litigation lawsuit (as long as the lawsuit is not solely to recover damages for injury to peace, happiness, or feelings),[1] because the text of OCGA § 51-7-83 (a) indicates that punitive damages are included, the statute did not change the common law generally allowing punitive damages in abusive litigation cases, and punitive damages in abusive litigation cases do not always constitute an impermissible double recovery.

---

[1] As explained more fully below, OCGA § 51-12-6 prohibits the recovery of punitive damages "[i]n a tort action in which the entire injury is to the peace, happiness, or feelings of the plaintiff," which we will sometimes refer to as "injured feelings" for convenience's sake. There also may be other statutes or principles of law that could bar recovery of punitive damages in specific abusive litigation cases, but those are not at issue in this case at this point.

Accordingly, we reverse the holding in Division 2 of the Court of Appeals's opinion and remand the case for further proceedings consistent with this opinion.

1. Coen worked for CDC Software Corporation from December 2011 until April 2012, when he was terminated. He then filed a lawsuit against CDC Software in DeKalb County State Court, alleging that the company breached the severance and other provisions in his employment contract. CDC Software hired the law firm Sutherland Asbill & Brennan LLP (now known as Eversheds Sutherland) to represent the company, with Allegra Lawrence-Hardy serving as lead counsel and Gabriel Mendel as associate counsel. While this contract lawsuit was pending, Aptean, Inc. acquired CDC Software and was added as a defendant as a corporate successor-in-interest. In April 2014, the trial court granted Coen partial summary judgment, ruling that the contract was valid and enforceable and there was no basis for CDC Software's withholding

3

payment to him.[2]

Coen then filed a motion for attorney fees and litigation expenses under OCGA § 9-15-14 (a) and (b), which the trial court granted in the total amount of $176,484.80, holding CDC Software, Aptean, and Sutherland jointly and severally liable. The court found that CDC Software had "adopted a strategy of litigation by attrition," litigating "numerous baseless defenses" despite "its lack of a justiciable defense," and that this "strategy constitutes the very bad faith OCGA § 9-15-14 exists to prevent, and the very bad faith that warrants an award of attorneys' fees and expenses." In September 2014, Coen dismissed with prejudice the remaining counts in his complaint.

In 2015, Coen filed three abusive litigation lawsuits in Fulton

---

[2] A little over a year into the litigation, Coen sent the defendants and their attorneys an abusive litigation notice under OCGA § 51-7-84, giving them 30 days to dismiss the defenses and claims that "lacked substantial justification." See OCGA § 51-7-84 (a) (explaining that the person injured by abusive litigation must give the opposing party notice of the intention to assert a claim of abusive litigation and the opportunity to withdraw the allegedly improper claims or defenses). The defendants then dismissed many, but not all, of the defenses and claims about which Coen complained.

4

County State Court: one against Sutherland and Lawrence-Hardy, one against Mendel, and one against Aptean, CDC Software, and five officers of CDC Software. In May 2016, Coen dismissed these lawsuits without prejudice.[3]

In September 2016, Coen filed a single renewal action under OCGA § 9-2-61 (a) in DeKalb County State Court, naming all of the defendants from the previous three abusive litigation lawsuits. He again raised a claim of abusive litigation and specifically requested damages for injury to his peace, happiness, or feelings; punitive damages; and attorney fees for the pending action.[4] Coen alleged, among other things, that in the contract lawsuit, the defendants

---

[3] In March 2016, Coen also filed a lawsuit against CDC Software and other defendants for defamation. The trial court dismissed the case based on res judicata and Coen's failure to state a claim. The Court of Appeals affirmed, but this Court reversed and remanded the case in an opinion that clarified the proper res judicata analysis. See *Coen v. CDC Software Corp.*, 304 Ga. 105 (816 SE2d 670) (2018). That lawsuit is not at issue here.

[4] The complaint also generally prayed for "all actual, consequential, general, special, and compensatory damages to which he is entitled by virtue of Defendants' breaches and conduct." Coen brought a breach of contract claim against the corporate defendants as well, and he added Balch & Bingham LLP and Matthew Ames, a partner at that law firm, as defendants to that claim. Coen later dismissed the breach of contract claim, and the trial court granted his request to dismiss Balch & Bingham and Ames as parties.

"asserted baseless primary defenses and numerous boilerplate affirmative defenses, all without substantial justification and for a wrongful purpose." He alleged that this

> intentionally overaggressive litigation strategy . . . caused delay[;] unnecessarily caused him time, trouble and mental distress; unnecessarily expanded the proceedings; and unjustifiably forced [him] to incur substantial fees and expenses at high financial risk to himself and his family, all to recover an obviously valid debt.

In October 2016, the defendants filed motions to dismiss Coen's claims. In May 2017, after a hearing, the trial court granted the motions to dismiss. The court held that Coen's claim of abusive litigation failed because he did not plead special damages (and he had already recovered attorney fees and litigation costs for the underlying contract lawsuit); his claim for damages based on injury to peace, happiness, or feelings was not a stand-alone claim but was subsumed by — and thus failed with — the abusive litigation claim; and his pleading for punitive damages failed because punitive damages are not available in an abusive litigation lawsuit. The court also held that Coen's claim for attorney fees failed because it was

6

ancillary to his abusive litigation claim. Coen appealed.

The Court of Appeals affirmed in part and reversed in part the trial court's dismissal of Coen's complaint. See *Coen*, 346 Ga. App. at 816. In Division 2 of its opinion, the Court of Appeals affirmed the dismissal of Coen's request for punitive damages, agreeing with the trial court's holding that a plaintiff cannot recover punitive damages for a statutory abusive litigation claim. See id. at 823-824. The Court of Appeals reversed the trial court's holding that Coen was required to plead special damages, see id. at 821-823; that holding is not at issue here. Coen petitioned for a writ of certiorari, arguing that the Court of Appeals's holding as to punitive damages is wrong because OCGA § 51-7-83 (a) authorizes the recovery of punitive damages in an abusive litigation case (not based solely on injured feelings). We granted his petition to consider that question.[5]

---

[5] The Court of Appeals also held that Coen's case was a proper renewal action. See *Coen*, 346 Ga. App. at 825-830. We denied Sutherland and Mendel's and Lawrence-Hardy's petitions for certiorari challenging that holding. The Court of Appeals also made rulings as to Lawrence-Hardy that neither she nor Coen asked this Court to review; they are not at issue here. See id. at 824-825.

7

2. (a) *The abusive litigation statutory tort*

In 1989, the General Assembly created the statutory tort of "abusive litigation," defined as follows:

> Any person who takes an active part in the initiation, continuation, or procurement of civil proceedings against another shall be liable for abusive litigation if such person acts:
> (1) With malice; and
> (2) Without substantial justification.

OCGA § 51-7-81. The statutory tort expressly replaced all other abusive litigation torts except OCGA § 9-15-14:

> On and after April 3, 1989, no claim other than as provided in this article or in Code Section 9-15-14 shall be allowed, whether statutory or common law, for the torts of malicious use of civil proceedings, malicious abuse of civil process, nor abusive litigation, provided that claims filed prior to such date shall not be affected. This article is the exclusive remedy for abusive litigation.

OCGA § 51-7-85. As to the damages available in a statutory abusive litigation case, as mentioned above, OCGA § 51-7-83 (a) says: "A plaintiff who prevails in an action under this article shall be entitled to all damages allowed by law as proven by the evidence, including costs and expenses of litigation and reasonable attorney's fees."

(b) *"[A]ll damages allowed by law as proven by the evidence."*

"[A]ll damages" is a broad phrase. In *Gordon v. Atlanta Cas. Co.*, 279 Ga. 148 (611 SE2d 24) (2005), for example, this Court applied a broad interpretation of the adjective "all" in holding that a plaintiff who was entitled to recover "all sums" under an automobile insurance statute could recover for the death of his son in a car accident, explaining:

> The language of the statute is plain and it is not illogical. It clearly states that the insurer is to pay "*all* sums which [the] insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." All means all, every single one.

Id. at 149 (emphasis in original; quoting former OCGA § 33-7-11 (a) (1)).

Punitive damages are a type of damages "allowed by law" in tort cases under certain limited conditions. See OCGA § 51-12-5.1 (b) ("Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would

9

raise the presumption of conscious indifference to consequences.").[6]

And whether the conduct required for a punitive damages award is "proven by the evidence" is left to the factfinder. Thus, at first blush, the text of OCGA § 51-7-83 (a) appears to encompass punitive damages.

The defendants point out that this Court held in another case that a statute allowing a plaintiff to recover "any damages sustained" did not provide for the recovery of punitive damages. See *Lyman v. Cellchem Intl., Inc.*, 300 Ga. 475, 477 (796 SE2d 255) (2017). We reached that conclusion in *Lyman*, however, primarily because "punitive damages generally are not 'sustained' by a plaintiff, but are imposed upon a defendant based on that defendant's wrongful conduct." Id. at 477. *Lyman*'s reasoning does not apply to OCGA § 51-7-83 (a), which does not limit "all damages"

---

[6] As mentioned above and discussed further below, one notable situation in which punitive damages are *not* "allowed by law" is in "tort action[s] in which the entire injury is to the peace, happiness, or feelings of the plaintiff." OCGA § 51-12-6. The second sentence of that statute says: "In such an action, punitive damages under Code Section 51-12-5 [dealing with torts arising before July 1987] or Code Section 51-12-5.1 shall not be awarded."

to damages *sustained*; instead, "all damages" is limited only to those damages "allowed by law as proven by the evidence."[7]

(c) *"[I]ncluding costs and expenses of litigation and reasonable attorney's fees."*

The defendants argue that "all damages" is also limited by the

---

[7] *Lyman* also reasoned that "where the legislature has indicated that punitive damages are recoverable, it has generally done so through express language," but all of the statutes that we cited as examples of this express reference to punitive damages describe recoverable damages using language similar to that of the statute at issue in *Lyman* — "general damages *sustained*" or "actual damages *sustained*." *Lyman*, 300 Ga. at 477-478 (emphasis added; citations omitted). Given *Lyman*'s primary point, those statutes needed to include punitive damages expressly to make such damages recoverable. Finally, *Lyman* noted that the statute at issue there provided for criminal sanctions limited to $50,000, which would make civil awards of potentially much larger punitive damages "incongruent." See id. at 478. The abusive litigation statute does not authorize criminal sanctions.

In *State Farm Mutual Automobile Insurance Co. v. Weathers*, 260 Ga. 123, 123 (392 SE2d 1) (1990), this Court approved the Court of Appeals's holding in *Roman v. Terrell*, 195 Ga. App. 219 (393 SE2d 83) (1990), that the "all sums" statutory language that had been at issue in *Gordon* did not cover punitive damages because the statute provided for the recovery of all sums which the insured was entitled to recover as damages "because of bodily injury to or death" and "because of injury to or destruction of property." *Roman*, 195 Ga. App. at 220. Much like we did later in *Lyman*, the Court of Appeals reasoned that this language did not include punitive damages because "an award of punitive damages stems from the tortfeasor's conduct rather than from the victim's bodily injury or property damage." *Roman*, 195 Ga. App. at 221. The Court of Appeals also noted, however, that when other courts have interpreted provisions that provide coverage for "all sums" without linking those sums to physical injury or property damage, the courts "have usually found the statutory language 'plain' and permitted the recovery of punitive damages." Id. at 220.

11

final phrase of OCGA § 51-7-83 (a): "including costs and expenses of litigation and reasonable attorney's fees." The defendants assert that expressly including litigation costs and expenses and attorney fees would be unnecessary if "all damages" truly meant *all* damages and that the "including" phrase therefore implies the exclusion of punitive damages. But "[r]edundancy is not a silver bullet"; sometimes what appears to be redundant or superfluous language actually functions to clarify a point that otherwise might be uncertain or confusing. *Rimini Street, Inc. v. Oracle USA, Inc.*, ___ U.S. ___, ___ (139 SCt 873, 203 LE2d 180) (2019). See generally *Wetzel v. State*, 298 Ga. 20, 32 (779 SE2d 263) (2015) ("As used in statutes, the word 'including' and the specific terms that follow it may serve to expand, to limit, or to confirm by illustration the meaning of a more general term that precedes it.").

Traditionally, litigation costs and expenses and attorney fees have not been clearly recoverable in abusive litigation cases. Attorney fees and expenses of litigation generally were not recoverable in the common-law torts of malicious abuse and

12

malicious use of legal process. See *Vogtle v. Coleman*, 259 Ga. 115, 118 n.3 (376 SE2d 861) (1989) ("[U]nder malicious use and abuse of process, attorney fees and expenses of litigation for having to defend the underlying suit are generally not allowed as an element of damages."). See also id. at 117 ("The American rule has been that expenses for defending a suit are generally unavailable unless authorized by a specific statute."). After this Court's 1986 decision in *Yost*, which redesigned the two common law torts into a new tort for abusive litigation,[8] the Court of Appeals held that plaintiffs bringing abusive litigation claims under *Yost* were not entitled to recover attorney fees expended in defending against the original suit or in bringing the abusive litigation suit. See *Ferguson v. City of Doraville*, 186 Ga. App. 430, 433-434 (367 SE2d 551) (1988). Part of that holding was overruled in *Vogtle*, where this Court said that "a *Yost* claim, like its predecessors malicious use and abuse of process, is an independent claim for damages," meaning that the plaintiff

---

[8] The two common law torts and *Yost* are discussed in much more detail in Division 3 below.

could seek attorney fees and expenses under OCGA § 13-6-11 for bringing the abusive litigation counterclaim. *Vogtle*, 259 Ga. at 118 -119. *Vogtle* did not, however, overrule *Ferguson*'s holding that the *Yost* tort did not provide for the recovery of attorney fees for defending against the underlying abusive litigation. See *Vogtle*, 259 Ga. at 119. Because the recovery of litigation costs and expenses and attorney fees in abusive litigation suits has historically been much less clear than the recovery of punitive damages — which, as we discuss below, were generally allowed in common law abusive litigation torts — there was good reason to be express in providing for the former, while not similarly spelling out the historically less disputed punitive damages.[9]

3. Although the words of OCGA § 51-7-83 (a) indicate that

---

[9] In fact, the remaining two subsections of OCGA § 51-7-83 further address the recovery of litigation costs and expenses and attorney fees by explaining how the abusive litigation statute interacts with OCGA § 9-15-14. See OCGA § 51-7-83 (b) (explaining that if "no damages other than costs and expenses of litigation and reasonable attorney's fees are claimed, the procedures provided in Code Section 9-15-14 shall be utilized instead"), (c) (explaining that filing a motion under OCGA § 9-15-14 does not preclude "the filing of an action under this article for damages other than costs and expenses of litigation and reasonable attorney's fees").

14

punitive damages generally are recoverable in abusive litigation torts, we must also consider the legal context in which this statutory text was enacted in 1989. See *May v. State*, 295 Ga. 388, 391 (761 SE2d 38) (2014) ("In our search for the meaning of a particular statutory provision, we look not only to the words of that provision, but we consider its legal context as well."). The Court of Appeals cited three of its prior cases in support of its holding that punitive damages are not available in a statutory abusive litigation action: *Freeman v. Wheeler*, 277 Ga. App. 753, 757 (627 SE2d 86) (2006); *Sharp v. Greer, Klosik & Daugherty*, 256 Ga. App. 370, 372 (568 SE2d 503) (2002); and *Snellings v. Sheppard*, 229 Ga. App. 753, 756 (494 SE2d 583) (1997). *Snellings* — which the Court of Appeals rules say is not a precedential decision because one of the judges on the panel concurred only in the judgment — was the only one of those cases that considered the language of OCGA § 51-7-83 (a).[10] The

---

[10] *Freeman* addressed collateral estoppel issues, not punitive damages; the Court of Appeals mentioned *Snellings*'s punitive damages holding only in a "compare" citation. *Sharp* rejected the availability of punitive damages for an abusive litigation claim in a summary alternative holding that cited only a

15

court purported to interpret the statute in light of its historical legal context, reasoning that because punitive damages were not allowed in commonlaw abusive litigation torts, OCGA § 51-7-83 (a) also did not allow punitive damages, because it did not include language expressly altering that status quo. See *Snellings*, 229 Ga. App. at 756-757. The problem with this reasoning is that *Snellings* misunderstood the legal history of abusive litigation torts, as we will explain in the following several pages.

(a) *Malicious abuse and malicious use of legal process.*

Before 1986, claims of abusive litigation in Georgia could be brought as one of two common law torts: malicious abuse of legal process and malicious use of legal process. See *Juchter v. Boehm, Bendheim & Co.*, 67 Ga. 534, 538 (1881) ("That the right exists to sue in all cases of the malicious abuse, or use of legal process without probable cause, is universally recognized, and needs no citation of authority."). See also *Porter v. Johnson*, 96 Ga. 145, 146-148 (23 SE

___

case dealing with an abusive litigation claim that was filed before the enactment of OCGA § 51-7-83 (a).

123) (1895) (explaining the difference between an action for malicious abuse of legal process and an action for malicious use of legal process). Petitioners seeking to bring either one of these claims faced sometimes high barriers. For example, plaintiffs in a malicious abuse of process case had to show that the defendant had an ulterior motive in bringing the litigation. See *Porter*, 96 Ga. at 146 ("An action for malicious abuse of legal process will lie where legal process has been employed for some object other than that which it was intended by law to effect . . . ."). See also *Ferguson v. Atlantic Land & Dev. Corp.*, 248 Ga. 69, 71 (281 SE2d 545) (1981) ("Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process." (citation and punctuation omitted)). Malicious use of process plaintiffs, on the other hand, had to prove that the defendants acted not only with malice but also without probable cause in bringing the legal action. See *Porter*, 96 Ga. at 147-148. Plaintiffs also were required to show that their person or property had been seized or show some other special injury and damage. See *Dixie Broadcasting Corp. v. Rivers*, 209 Ga. 98, 108 (70

SE2d 734) (1952). See also *Tapley v. Youmans*, 95 Ga. App. 161, 175 (97 SE2d 365) (1957). Humiliation or damages to reputation were not considered to be special injuries, and neither were attorney fees or expenses and costs of litigation. See *Dixie Broadcasting*, 209 Ga. at 108.

Important to this case, however, plaintiffs in both malicious abuse and malicious use of process cases *could* recover punitive damages. See *Dixie Broadcasting*, 209 Ga. at 106 ("'The right to recover damages exists equally in both classes of cases; but vindictive or punitive damages are only allowed where the act of the defendant was influenced by malicious motives and without probable cause.'" (quoting *Juchter*, 67 Ga. at 538-539)); *Woodley v. Coker*, 119 Ga. 226, 226 (46 SE 89) (1903) ("Punitive damages are recoverable in an action for the malicious use of process in a civil suit."); *Crusselle v. Pugh*, 71 Ga. 744, 747 (1883) ("[A] right of action exists in all cases of malicious abuse of legal process, or its use without probable cause, and . . . punitive damages may be recovered in such cases."); *Multiple Realty, Inc. v. Walker*, 119 Ga. App. 393,

18

396 (167 SE2d 380) (1969) (upholding an award of punitive damages in malicious abuse of process case). See also 1 Am. Jur. 2d Abuse of Process § 31 (Nov. 2019 update) ("Where an abuse of process is accompanied by malice, exemplary or punitive damages may be awarded.").

(b) *Yost v. Torok.*

In 1986, this Court decided *Yost v. Torok,* 256 Ga. 92 (344 SE2d 414) (1986), in which certiorari was granted to "determine whether the Toroks' complaint stated a claim for malicious abuse of process." Id. at 92. Instead of deciding that particular question, the *Yost* Court announced major changes to the two common law torts dealing with abusive litigation.[11] The Court began the opinion by discussing the elements and complexities of the two torts and noting the difficulties plaintiffs could have in recovering under those torts, explaining that the torts "provide remedies only for extraordinary circumstances"

---

[11] The *Yost* Court did not identify any applicable authority for so dramatically altering the common law in Georgia, and we are dubious that such authority exists. But we need not delve into that question to decide this case, particularly given that the 1989 enactment of the statutory abusive litigation tort largely abrogated *Yost*'s judicially pronounced rules.

19

and bemoaning the lack of "internal sanctions" that would allow abusive litigation to be addressed within the allegedly abusive litigation itself. Id. at 92-95. The Court then explained that the recent enactment of OCGA § 9-15-14 provided for some internal sanctions – namely, attorney fees and litigation expenses — but did not resolve the problems "relative to other elements of recovery, specifically: special damages *other than* attorney fees and expenses of litigation; damages for mental distress, where there is either wilfulness, or wanton and reckless disregard of consequences[;] . . . or nominal damages pursuant to OCGA § 51-12-4." *Yost*, 256 Ga. at 95 (emphasis in original).[12] At this point in the opinion, to conclude

---

[12] OCGA § 9-15-14 says, in pertinent part:

(a) In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position. Attorney's fees and expenses so awarded shall be assessed against the party asserting such claim, defense, or other position, or against that party's attorney, or against both in such manner as is just.

(b) The court may assess reasonable and necessary

its discussion of the damages that the existing common law torts had not made sufficiently attainable, the Court observed in a footnote: "Punitive damages, however, are excluded, as the tort itself is designed as a deterrent. See OCGA § 51-12-5; *Westview Cemetery, Inc. v. Blanchard*, 234 Ga. 540, 544 (216 SE2d 776) (1975)." *Yost*, 256 Ga. at 95 n.3.

The Court then turned from this background discussion of the perceived problems with the common law to redefining the malicious abuse and malicious use of process torts in this way:

> The tort system can (and should) provide within its own structure the means for preventing its abuse. To accomplish this, we now delineate a remedy which will (a)

---

attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under Chapter 11 of this title, the "Georgia Civil Practice Act." As used in this Code section, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

. . .

(e) Attorney's fees and expenses under this Code section may be requested by motion at any time during the course of the action but not later than 45 days after the final disposition of the action.

merge, by redefinition, the common-law claims of malicious abuse and malicious use; (b) assure against chain-reaction litigation by requiring that any such claim be presented as a part of the underlying action; (c) specify a procedural mode for the disposition of the claim.

*Yost*, 256 Ga. at 95.

After this statement comes a footnote discussing a law review article that the Court apparently considered in fashioning the new claim. The "unfounded litigation" cause of action proposed in the article would "allow recovery of punitive damages" based on "proof of malice or other aggravating circumstances." *Yost*, 256 Ga. at 95 n.4 (citing Scott Partridge, Joseph Wilkinson, & Allen Krouse, *A Complaint Based on Rumors: Countering Frivolous Litigation,* 31 Loy. L. Rev. 221, 254-263 (1985)). The Court also cited a law review note that advocated for the creation of a uniform statutory approach to "the problem of unfounded litigation," and explained that in such a claim "[f]actual dishonesty and other extreme abuses could justify punitive damages." John Raymond Jones, Liability for Proceeding with Unfounded Litigation, 33 Vand. L. Rev. 743, 772 (1980).

The Court proceeded to "re-define the elements of the common-

law claim" in this way:

> Any party who shall assert a claim, defense, or other position with respect to which there exists such a complete absence of any justiciable issue of law or fact that it reasonably could not be believed that a court would accept the asserted claim, defense, or other position; or any party who shall bring or defend an action, or any part thereof, that lacks substantial justification, or is interposed for delay or harassment; or any party who unnecessarily expands the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures, shall be liable in tort to an opposing party who suffers damage thereby.

*Yost*, 256 Ga. at 95-96.

Damages are not mentioned anywhere else in the description of this new abusive litigation tort; the focus of the redesign was on changing the procedure for bringing the tort and changing what a plaintiff must prove to prevail. See *Yost*, 256 Ga. at 96. *Yost* did not purport to tinker with the types of damages that had been available under the common law torts.[13] Moreover, punitive damages were not

---

[13] It is not clear that the damages for mental distress or nominal damages that the *Yost* Court apparently thought should be available in abusive litigation actions had realistically been available at common law. As mentioned above, plaintiffs claiming malicious use of process were required to plead a special injury. See *Dixie Broadcasting*, 209 Ga. at 108. Mental distress

at issue in *Yost*, so *Yost*'s brief mention of them in footnote 3 (at the

tail end of a background discussion that was largely dicta) was pure

dicta, which actually mischaracterized the state of the law regarding

punitive damages in abusive litigation torts. See, e.g., *Juchter*, 67

Ga. at 538-539.

In support of this dicta, *Yost* cited only former OCGA § 51-12-

5, which provided for "additional damages" to "deter the wrongdoer

from repeating the trespass or as compensation for the wounded

feelings of the plaintiff," and *Westview Cemetery*, which held that

when a plaintiff's only injury was to peace, happiness, or feelings

---

damages alone may not have satisfied this requirement. However, damages for injury to peace, happiness, or feelings have been provided for by statute in tort actions at least since 1860. See Code of 1860, Part 2, Chapter V, § 2999; Ga. L. 1987, p. 915, codified as OCGA § 51-12-6. Until the Tort Reform Act of 1987, the statutes called these damages "vindictive damages." See Code of 1860, Part 2, Chapter V, § 2999; Code of 1933, § 105-2003. And *Juchter* said that "vindictive or punitive damages" were recoverable in malicious use and abuse of process claims. 67 Ga. at 539. See also *Dixie Broadcasting*, 209 Ga. at 106 (quoting this language). Similarly, nominal damages have been provided for by statute at least since 1860. See 1860 Code, Part 2, Chapter V, § 2997, now codified as OCGA § 51-12-4. The dissent by three Justices in *Dixie Broadcasting* asserted that nominal damages would be available in that malicious use of process case, and the majority did not directly counter that point, although it held that the claim should have been dismissed because the plaintiff failed to show special injury or damages. See 209 Ga. at 112 (Candler, J., dissenting). We need not resolve these issues in this case.

under the predecessor statute to the first sentence of OCGA § 51-12-6, allowing her to recover punitive damages as well would be an impermissible double recovery, see *Westview Cemetery*, 234 Ga. at 544-545.[14] Because footnote 3 comes at the end of the sentence that discusses the recovery of damages for mental distress based on a defendant's wilfulness or wanton and reckless disregard for consequences, perhaps the footnote was a clumsily worded attempt to say that punitive damages generally are not recoverable in addition to injured feelings damages in an abusive litigation tort — as is statutorily the rule today due to the second sentence of OCGA § 51-12-6.[15]

As discussed above, in *Yost's holdings* — the new cause of action and procedures that the Court crafted — there is no mention

---

[14] *Westview Cemetery* did not involve, and did not even mention, the common law abusive litigation torts.

[15] The second sentence in OCGA § 51-12-6, which expressly prohibits the recovery of punitive damages if the entire injury in a tort action is to the plaintiff's peace, happiness, or feelings, was enacted in 1987. See Ga. L. 1987, p. 915. As noted in footnote 13 above, before 1987 the statute allowing for injured feelings damages called them "vindictive damages," and *Juchter* and *Dixie Broadcasting* said that in abusive litigation torts, "vindictive *or* punitive damages" were allowed.

of punitive damages being categorically unavailable. Instead, the Court included a footnote referencing the scholarly sources presumably used in crafting the new tort, both of which suggest that punitive damages should be available in some abusive litigation cases. In sum, the incorrect (or at least overbroad) dicta in *Yost*'s footnote 3 did not change the state of the law as to the recovery of punitive damages for abusive litigation torts.[16]

(c) *Snellings v. Sheppard.*

After *Yost*, the law in Georgia as to the availability of punitive damages in abusive litigation torts remained what it had always been — punitive damages were generally recoverable in such cases as long as the plaintiffs were not seeking damages solely for injury

---

[16] Three years after *Yost*, we repeated in passing dicta *Yost*'s statement about punitive damages. See *Vogtle*, 259 Ga. at 116. The question in *Vogtle* was whether the plaintiff could pursue damages for injury to peace, happiness, or feelings, so although punitive damages were not at issue in that case, if we cited that part of *Yost* to indicate that punitive damages were not available to the *Vogtle* plaintiff, the statement was correct as it applied to that case. The Court of Appeals also noted *Yost*'s footnote about punitive damages when discussing what damages an abusive litigation plaintiff could recover in *Ferguson*, 186 Ga. App. at 433 n.2, although it is not clear whether punitive damages were requested by the *Ferguson* parties. Neither of these cases purported to (or did) change Georgia law as to the availability of punitive damages in common-law abusive litigation torts.

26

to peace, happiness, or feelings. This was the legal landscape in which the General Assembly erected the new, statutory tort of "abusive litigation" in 1989.

Eight years later in *Snellings*, the Court of Appeals addressed the question of whether the statutory abusive litigation tort allowed punitive damages to be recovered under OCGA § 51-7-83 (a). The Court of Appeals acknowledged the statute's broad "all damages allowed by law" text. See *Snellings*, 229 Ga. App. at 756. But the court then quoted *Yost*'s footnote 3 for the proposition that under the common law at the time the statute was enacted, "punitive damages were excluded from the recoverable damages for the tort of civil abuse of process." Id. (citation and punctuation omitted). To derogate from that common law, the court reasoned, the General Assembly would have to be more explicit "to change the law so dramatically as to authorize by silence the imposition of punitive damages when such damages were hitherto forbidden." Id. at 756-757. As explained above, however, *Snellings*'s premise that the law at the time OCGA § 51-7-83 (a) was enacted did not allow punitive

damages — a premise based solely on the misleading dicta in *Yost* — was wrong, and that faulty premise led the court to an incorrect conclusion.[17]

In fact, because the *opposite* of the premise on which *Snellings* relied is true, the reasoning employed in that opinion actually supports the *opposite* of *Snellings*'s conclusion. Because the General Assembly was legislating in a legal landscape where punitive damages were — and traditionally had been — allowed in abusive litigation torts (not based solely on injured feelings), it is presumed that the phrase "all damages allowed by law" includes punitive damages. See *May*, 295 Ga. at 397 ("[T]o the extent that statutory text can be as reasonably understood to conform to the common law

_____

[17] After OCGA § 51-7-83 (a) was enacted, two other Court of Appeals cases similarly misread the dicta in *Yost*'s footnote 3 as a holding that punitive damages were not allowed in the *Yost* tort. See *Alcovy Properties, Inc. v. MTW Inv. Co.*, 212 Ga. App. 102, 104 (441 SE2d 288) (1994); *Rice v. Cropsey*, 203 Ga. App. 272, 273 (416 SE2d 786) (1992). Those decisions were not part of the legal background in 1989, so the General Assembly could not have considered them. They also were wrong. We therefore overrule the punitive damages holding based on *Yost* in those two cases, although we note that those holdings already have minimal ongoing import because the *Yost* tort was fully supplanted by the statutory abusive litigation tort three decades ago. See OCGA § 51-7-85.

as to depart from it, the courts usually presume that the legislature meant to adhere to the common law.").[18]

The defendants contend that even if the holding of *Snellings* was wrong, we should follow it because the legislature did not amend OCGA § 51-7-83 (a) after *Snellings* or after the Court of Appeals reached the same conclusion in *Sharp* in 2002. This Court has said that "[w]here a statute has, by a long series of decisions, received a judicial construction in which the General Assembly has acquiesced and thereby given its implicit legislative approval, the courts should not disturb that settled construction." *Abernathy v.*

---

[18] We reject the defendant's argument that punitive damages are not recoverable under OCGA § 51-7-83 (a) because the statutory tort was meant to codify the *Yost* tort. In fact, the statutory tort expressly differs from the *Yost* tort in important procedural and substantive ways. *Yost*, for example, required an abusive litigation claim to be brought as a compulsory counterclaim, see 256 Ga. at 96, whereas the statutory claim must be brought after the allegedly abusive litigation has concluded, see OCGA § 51-7-84 (b). The statutory tort also has several complete defenses, including voluntarily discontinuing the proceeding within 30 days after notice, see OCGA § 51-7-82 (a), that did not exist in the *Yost* tort, see 256 Ga. at 96 (noting that the trier of fact may consider relevant material, such as an offer of settlement). Even if we set these differences aside, however, and assume that the statutory tort meant to preserve other parts of the *Yost* tort, because the *Yost* tort, properly understood, did not preclude the recovery of punitive damages (unless the claim was based solely on injured feelings), we would presume that OCGA § 51-7-83 (a) preserved the availability of punitive damages.

*City of Albany*, 269 Ga. 88, 90 (495 SE2d 13) (1998). But we have also recognized that "it can be perilous to rely heavily on legislative silence and inaction to conclude that a court's interpretation of a statute is correct." *State v. Jackson*, 287 Ga. 646, 659 n.8 (697 SE2d 757) (2010). We are unpersuaded that the fact that OCGA § 51-7-83 (a) has never been amended indicates legislative approval of *Snellings* and *Sharp*. *Snellings* was not viewed as precedent even by the Court of Appeals; *Sharp* was an alternative holding that did not address the language of the statute; and this Court has never before spoken authoritatively on the issue. There has not been a "settled construction" of the statute before today.

4. Finally, the defendants assert that because, as *Yost* said in its footnote 3 dicta, the abusive litigation tort is already a deterrent, the addition of punitive damages is impermissibly duplicative. Over a century of Georgia law before *Yost* disagreed with that broad assertion, and so do we. The defendants argue that because every plaintiff who brings an abusive litigation action must prove that the defendant acted "with malice," see OCGA § 51-7-81 (1), and because

30

punitive damages may be awarded when a "defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or [an] entire want of care," OCGA § 51-12-5.1 (b), every abusive litigation plaintiff may be entitled to punitive damages on top of other damages.

This argument clearly fails with regard to abusive litigation actions in which the plaintiff seeks damages only for injury to peace, happiness, or feelings under OCGA § 51-12-6, because as noted repeatedly in this opinion, punitive damages are expressly disallowed in such cases. As for abusive litigation cases in which the plaintiff seeks other compensatory damages, the defendants' proposition may be true, but what is wrong with that? If an abusive litigation plaintiff recovers for actual damages sustained and attorney fees and litigation expenses, an additional recovery of punitive damages does not present the double-recovery situation that cases like *Westview Cemetery* say must be avoided. Instead, the plaintiff is made whole with compensatory damages and attorney fees and litigation expenses, and the defendant may also be

31

punished with punitive damages. Each award serves a different purpose. That may be why the common law generally allowed punitive damages in abusive litigation torts. Of course, if the General Assembly shares the defendants' fear that punitive damages may become too common in abusive litigation cases, it may amend the Georgia Code to prohibit the recovery of punitive damages.

For all of these reasons, we conclude that OCGA § 51-7-83 (a) allows for the recovery of punitive damages in abusive litigation lawsuits not based solely on injured feelings. We therefore overrule the contrary holdings in *Snellings* and *Sharp*, disapprove the contrary language in *Freeman*, and reverse the Court of Appeals's contrary holding in Division 2 of its opinion in this case.[19]

5. The defendants also point out some perceived deficiencies in

---

[19] The defendants also assert that punitive damages should not be allowed here because the *underlying* allegedly abusive lawsuit was a contract action. See *Trust Co. Bank v. Citizens & Southern Trust Co.*, 260 Ga. 124, 126 (390 SE2d 589) (1990) ("Punitive damages are not available in actions for breach of contract."). But the action *at issue* is for abusive litigation, not breach of contract.

Coen's complaint. They assert that because the only damages Coen has specifically requested other than punitive damages and litigation expenses for this suit are damages for injury to peace, happiness, and feelings under OCGA § 51-12-6, and because he alleges in his complaint that they are his "sole injury," his request for punitive damages must fail even if punitive damages are generally recoverable in abusive litigation actions. Because the trial court and the Court of Appeals held that punitive damages are never allowed in a statutory abusive litigation action, neither court addressed these potential barriers to Coen's recovering punitive damages, and we did not grant certiorari to consider these issues. We therefore leave them to be addressed on remand.[20]

*Judgment reversed in part, and case remanded. All the Justices*

---

[20] We note, however, that this case is still at the pleading stage. See OCGA §§ 9-2-4 ("A plaintiff may pursue any number of consistent or inconsistent remedies against the same person or different persons until he shall obtain a satisfaction from some of them."); 9-11-8 (e) (2) ("A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. . . . A party may also state as many separate claims or defenses as he has, regardless of consistency and whether based on legal or on equitable grounds or on both."); 9-11-15 (a) ("A party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order. . . . ").

33

*concur.*

DECIDED FEBRUARY 10, 2020.

Certiorari to the Court of Appeals of Georgia — 346 Ga. App. 815.

*Charles M. Cork III*, for appellant.

*Balch & Bingham, Michael J. Bowers, Matthew B. Ames, Jessica F. Nwokocha, Jena C. Lombard; Alston & Bird, Steven M. Collins, Samuel R. Rutherford, Elizabeth B. Brown; Robbins Ross Alloy Belinfante Littlefield, Richard L. Robbins, Alexa R. Ross, Rachel F. Gage*, for appellees.